MIED ProSe 7 (Rev 5/16) Complaint for Employment Discrimination

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

NINTU XI GILMORE-BEY.

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

v.

ALEX KETTY a.k.a. ALAA TOMA; JOHNNY KETTY; NONI L. VALICENTI; HARRY KIRSBAUM; JULIE ANN GRAVES; GLOW PATH PAVERS, LLC; GLOW PATH TECHNOLOGY, LLC; AMBIENT GLOW PRODUCTS, LLC; heirs, successors, agents, assigns, severally and jointly, private/individual and public/corporate capacity.

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

Case: 2:23-cv-13083
Assigned To : Parker, Linda V.
Referral Judge: Altman, Kimberly G.
Assign. Date : 12/5/2023
Description: CMP GILMORE-BEY V. KETTY ET AL

*(to be filled in by the Clerk's Office)*

Jury Trial: ☑ Yes ☐ No
*(check one)*

## Complaint for Employment Discrimination

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

## I.     The Parties to This Complaint

### A.     The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | NINTU XI GILMORE-BEY |
| Street Address | c/o 60 East Milwaukee Street, Unit 6633 |
| City and County | Detroit Wayne County |
| State and Zip Code | Michigan [48202-9998] |
| Telephone Number | N/A |
| E-mail Address | Nintuxi@gmail.com |

### B.     The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | ALEX KETTY a.k.a. ALAA TOMA |
| Job or Title (if known) | Co-CEO |
| Street Address | 1627 Gerundecut |
| City and County | West Bloomfield Oakland County |
| State and Zip Code | Michigan 48324 |
| Telephone Number | 248-229-2788 |
| E-mail Address (if known) | alex.ketty@yahoo.com |

Defendant No. 2

| | |
|---|---|
| Name | JOHNNY KETTY |
| Job or Title (if known) | Co-CEO |
| Street Address | 1937 Shipman Blvd |
| City and County | Birmingham Oakland County |
| State and Zip Code | Michigan 48009 |
| Telephone Number | 248-808-3300 |
| E-mail Address (if known) | johnnyketty@yahoo.com |

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

Defendant No. 3

| | |
|---|---|
| Name | NONI L. VALICENTI |
| Job or Title (if known) | Payroll Manager |
| Street Address | 336 Helen Street |
| City and County | Inkster Wayne County |
| State and Zip Code | Michigan 48141 |
| Telephone Number | 815-354-0162 |
| E-mail Address (if known) | billing@creativebrickpaving.com |

Defendant No. 4

| | |
|---|---|
| Name | HARRY KIRSBAUM |
| Job or Title (if known) | HR Manager/Sales Manager |
| Street Address | 1424 Rosedale Avenue |
| City and County | Sylvan Lake Oakland County |
| State and Zip Code | Michigan 48320 |
| Telephone Number | 248-243-4517 |
| E-mail Address (if known) | hkirsbaum@gmail.com |

## C.    Place of Employment

The address at which I sought employment or was employed by the defendant(s) is:

| | |
|---|---|
| Name | GLOW PATH PAVERS,LLC. |
| Street Address | 1060 W. Huron Street |
| City and County | Waterford Township Oakland County |
| State and Zip Code | Michigan 48328 |
| Telephone Number | 248-229-2788 |

3

# B. Defendants

## Continuation

**Defendant No. 5**
JULIE ANN GRAVES
Administrative Assistant
413 Glenbrooke, Apt. 9204
Waterford Oakland County Michigan 48327
248-930-1066

**Defendant No. 6**
GLOW PATH PAVERS, LLC
1627 Gerondecut
West Bloomfield Oakland County Michigan 48324
248-229-2788

**Defendant No. 7**
GLOW PATH TECHNOLOGY, LLC.
1627 Gerondecut
West Bloomfield Oakland County Michigan 48324
248-229-2788

**Defendant No. 8**
AMBIENT GLOW PRODUCTS, LLC.
1627 Gerondecut
West Bloomfield Oakland County Michigan 48324
248-229-2788

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

## II.   Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑   Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐   Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐   Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑   Other federal law *(specify the federal law)*:
18 U.S.C. § 1001.

☐   Relevant state law *(specify, if known)*:

☐   Relevant city or county law *(specify, if known)*:

4

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐    Failure to hire me.
☑    Termination of my employment.
☐    Failure to promote me.
☐    Failure to accommodate my disability.
☑    Unequal terms and conditions of my employment.
☑    Retaliation.
☐    Other acts *(specify)*:

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)
04.09.23; 12.06.22; 11.17.22; 11.21.22; 11.22.22; 11.28.22; 12.05.22.

C.    I believe that defendant(s) *(check one)*:

☑    is/are still committing these acts against me.
☐    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☑    race   Aboriginal.

☑    color   Copper-colored race.

☐    gender/sex _____

☐    religion _____

☑    national origin   Ancient Autochthonous/Indigene Aboriginals by Desc

☐    age.  My year of birth is _____.  *(Give your year of birth only if you are asserting a claim of age discrimination.)*

☐    disability or perceived disability *(specify disability)*

_____

5

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

      E.      The facts of my case are as follows.  Attach additional pages if needed.

             SEE TEN (10) PAGE  ATTACHMENT.

*(Note:  As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

6

# E. The Facts of my case are as follows.

**Summary of the Facts**

Plaintiff is a woman of Ancient Autochthonous/Indigenous Aboriginal descent with copper-tone skin color and also protected under the American Declaration on the Rights of Indigenous Peoples and the United Nations Declaration on the Rights of Indigenous Peoples but not limited to with protected rights to work and be free of discrimination and harm of any kind. The Plaintiff was injured by the defendants due to their perpetual discrimination and fraudulent statements that caused the Plaintiff to be terminated. The Plaintiff demands to be made whole for the injuries.

The GLOW PATH PAVERS, LLC, GLOW PATH TECHNOLOGY, LLC, all derivatives thereof, (hereinafter "GP") owners, Alex and Johnny Ketty terminated Plaintiff after Plaintiff decided to inform them of the discrimination, harassment, hostility, and safety violations that took place in the workplace. Plaintiff's termination was under the pretext that GP were closing their doors until further notice because of financial hardship, on Saturday, December 10, 2022, last day for all staff being Friday, December 09, 2022. This was stated to all of the onsite staff during a meeting that was supposed to have been scheduled to discuss and address the complaints by Plaintiff but never discussed. The week of December 12, 2022, Plaintiff discovered that Plaintiff was the only one let go as GP remained open and all other onsite staff continued to work daily. The Plaintiff worked about 16-18 days before being terminated.

On Monday, November 21, 2022, Johnny Ketty informed Plaintiff that Noni Valicenti Payroll Manager, did not like Plaintiff, "specifically," and did not want Plaintiff in the seat of the Office Manager and that Noni Valicenti wanted the seat of Office Manager for herself. Johnny Ketty warned Plaintiff to be careful and watchful of Noni Valicenti.

Plaintiff was the only employee made to sign a Non-Disclosure Agreement when this is a condition of employment for all staff per GP employee handbook. Plaintiff was asked to do processes that no other staff had to do in the past or present. Plaintiff was left out of the implementation of the company's new CRM system configuration, a system that Plaintiff was told that Plaintiff would be solely responsible for overseeing and implementing  throughout the company once system was up and running, employee/staff records were compromised by files being left unlocked and accessible to all staff. The employee files had no to incomplete documentation, access was withheld from Plaintiff and/or delayed, Plaintiff was often given inaccurate and incomplete information which often delayed Plaintiff work progress, Plaintiff was often obstructed from performing duties in Plaintiffs Office Manager capacity. Plaintiff was to oversee

several on and off-site staff. Staff names were given partially and in segments which started after 11 days from Plaintiff's first day of work when it was said that Plaintiff would be given staff names no later than November 21, 2022. There continued to be confusion and no clarity regarding the staff whom Plaintiff was to oversee. It went from five (5) in-house staff and the outside staff in the states of TX, CA, and FL per Indeed job posting, to all staff except Julie Graves and Noni Valicenti per Noni Valicenti. On November 25, 2022, Alex Ketty verbally gave Plaintiff staff names (by first name and nickname basis) that Plaintiff was to oversee which included Julie Graves, Administrative Assistant and Harry Kirsbaum, HR and Sales Manager. Plaintiff was constantly targeted and singled out, employee's safety was put at risk due to failure to have and enforce safety protocols. The HR Manager informed Plaintiff that he was thrown into the position as HR Manager and did not have any prior experience or knowledge of any employment laws. The HR Manager informed Plaintiff that he did not have access to employee files nor did the HR Manager know where the files were kept until Plaintiff showed the HR Manager upon Plaintiff's departure. Plaintiff learned that certain onsite staff had a history of discriminating and harassing the Owner and her staff at the company next door that appeared to be of the same national origin and color as Plaintiff.

**Facts:**

1. 11.02.2022, Affiant applied for an Office Manager position, hereinafter ("OMP"), on Indeed with GP.
2. 11.03.2022, Plaintiff received an email through indeed from Harry Kirsbaum, said to be "HR and Sales Manager" for GPP, hereinafter ("HK"), expressing an interest in speaking with Plaintiff regarding the OMP.
3. 11.04.2022 at 1430, a scheduled phone call took place with Plaintiff and HK. HK spoke highly about how valuable Plaintiff was and would be a great fit and was what the company needed.
4. 11.09.2022, HK emailed Plaintiff through Indeed to see if Plaintiff still had an interest in the OMP and that HK didn't want "someone else to get you", you, referring to Plaintiff.
5. 11.09.2022, Plaintiff spoke with Alex Ketty, said Co-Owner of GP, hereinafter, ("AK"), and scheduled an in-person interview for 11.10.2022 at 0900.
6. 11.10.2022 at 0900, Plaintiff arrived for the interview. AK arrived thirty minutes late due to said traffic. As Plaintiff waited for AK's arrival, Julie Graves, said administrative assistant for GP, hereinafter ("JG"), sat to, awkwardly, talk and question Plaintiff. JG assumed Plaintiff was interviewing for a Sales position.
7. Plaintiff verbally accepted AK's offer to work fulltime for the OMP starting on 11.15.2022 at 9:00 a.m. with terms to be put in writing and signed by both parties on or before Plaintiff's start date on 11.15.2022.

**E. The Facts of my case are as follows**

8. AK stated that he would follow-up with Plaintiff later on 11.10.2022. After no follow-up, Plaintiff followed-up with AK on 11.12.2022 and with AK's consent, Plaintiff emailed AK a written agreement displaying terms of employment to review and revise, as needed.

9. 11.15.2022 at 0900, Plaintiff started her first day at work. The written agreement or payroll were not finalized and AK claimed to be out-of-state and would not be in the office until Friday. 11.18.2022.

10. Upon Plaintiff's arrival on 11.15.2022, JG and Kristen Watts, said Lead Generator of GP, hereinafter, ("KW"), were in the designated area of the Office Manager's office cleaning the desk. An office that is accessed daily by all staff with no privacy or ability to lock office when Office Manager is not in office. Plaintiff thanked JG and KW. KW gave Plaintiff a password to Plaintiff's company email and desk computer, a password that is used across the company and known by many. Plaintiff asked about files that were all unlocked for anyone to access including the employee files and payroll documents, credit cards and financials. JG stated to Plaintiff that the employee file is a place Plaintiff should not be in and the file was then locked. JG informed Plaintiff that AK was expecting Plaintiff's call.

11. 11.15.2022 at 0940, Plaintiff called AK from the office phone and received no answer. Plaintiff texted AK. AK followed up with around 0953 and asked Plaintiff if she could develop a CRM system for the company to save money due to CRM developer's expensive rates. Plaintiff made AK aware that that was not an area of expertise of Plaintiff's.

12. 11.15.2022 at or around 1030, KW cut her hand with her personal pocket knife while attempting to cut a tie on a box. KW had to report to the emergency room where KW received stitches for the injury and an injection of some kind. Since the injury was never documented, on 11.29.2022, Plaintiff thought it was best to have KW complete an incident form that Plaintiff found online and Plaintiff filed away in KW's file. Plaintiff asked if there were any box cutters available for staff and KW stated that there were not and that staff had to supply their own tools. On 11.29.2022, Plaintiff drafted and completed a safety manual for HK to review and approve. Plaintiff implemented a yearly safety training plan that would consist of three (3) videos for all staff to view and then sign off on.

13. 11.15.2022 at 1350, Plaintiff expressed a concern via text to AK about finalizing any agreements and payroll for wages before Plaintiff could start another day. AK had someone named, Noni Valicenti, said to be a volunteer doing payroll for GP, hereinafter, ("NV"), intervene, without Plaintiff's knowledge or accurate information that just brought confusion with attempted conflict. AK gave NV Plaintiff's phone number without Plaintiff's knowledge or consent. NV started texting Plaintiff.

14. On 11.15.2022 at 1554, NV emailed a revised written agreement with employment terms including one of three of Plaintiff's reports being NV and a Non-Disclosure Agreement, hereinafter, ("NDA"), stating that Plaintiff had to sign the NDA under notary,

**E. The Facts of my case are as follows**

no later than 11.16.2022, a deadline when the other signing party would not be available.

15. Plaintiff reviewed the documents after work hours and responded with some needed corrections and questions.

16. On 11.16.2022, after Plaintiff had already reported to work, NV attempted to terminate Plaintiff until further notice due to assumptions that Plaintiff had a problem with the agreement and NDA and making a statement that Plaintiff wasn't ready to work as needed, making Plaintiff feel as if Plaintiff's questions for clarity regarding the agreement and NDA with intent to sign and agree to documents with accuracy and a meeting of the minds was frowned upon. NV's condescending statement seemed to attack Plaintiff's work ethic. Plaintiff informed NV that Plaintiff had already reported to work for the day and was Plaintiff's second day. NV stated that NV would be in route to speak with Plaintiff in person.

17. On 11.16.2022 at or around 1000, Plaintiff spoke with HK about what was going on with NV. HK claimed he was not aware of what was going on.

18. Upon NV's arrival on 11.16.2022 at or around 1030, NV and HK, immediately, approached Plaintiff in the Plaintiff's office to talk. NV was the only one talking to Plaintiff and NV's approach was one of interrogation, assumption, re-interviewing when NV has no authority to hire or fire, and challenging Plaintiff's work ethics. Before NV's departure, Plaintiff gave NV a completed W-9 Form, I-9 form with documentation. NV asked HK for and was given Plaintiff's resume for NV to review. NV left Plaintiff's personal documents: I-9 Form with documentation, and banking information out in the open, without a folder, on a desktop file organizer. Plaintiff felt that Plaintiff's personal information had been compromised because of NV's negligence.

19. Plaintiff created a spreadsheet to start compiling product data as a focused directive from AK. JG informed Plaintiff that compiling product data had been done on several occasions. Plaintiff asked why it needed to be done again so that Plaintiff could understand and resolve what the issues were with redundancy. Plaintiff asked for all available data that had been compiled. JG gave Plaintiff some information that was said to be most current and AK stated that current information was not accurate. AK suggested that Plaintiff call the manufacturers for accurate information although JG had already contacted these same manufacturers on several occasions.

20. 11.15.2022 at or around 1140, HK gave Plaintiff a company employee handbook that stated all employees were to sign an NDA. Current staff were never presented with or made to sign an NDA, except Plaintiff. The NDA and Employment Offer letter did not get signed by AK and Plaintiff until 11.21.2022.

21. On 11.17.2022 at or around 1130, while JG stood in the doorway of Plaintiff's office, Plaintiff sitting at her desk and KW standing inside Plaintiff's office, JG stated that

"someone took" a book/catalog of some kind with pallet measurements off of her desk. KW stated that she did not take anything and JG responded that JG did not say that KW did it. Both JG and KW walked away together to JG's desk.

22. On 11.17.2022, at or around 1200, while Plaintiff sat at Plaintiff's desk, KW was in Plaintiff's office, JG walked in Plaintiff's office standing on the side of Plaintiff's desk stating that someone dropped a large amount of liquid soap in the sink and JG had to clean the bathroom a second time and that JG was, too, the janitor around the office. Plaintiff stated that all staff should contribute by cleaning up behind ourselves.

23. At the end of day on 11.18.2022 at or around 1600, Plaintiff received a timecard from NV.

24. Plaintiff had asked on several occasions, verbally and in writing, for access to all employee files and staff that Plaintiff were said to oversee.

25. NV and JG were supposed to turn over and/or share all access to passwords, company and employee records, etc., but access was being withheld from or "bread crumbed" to Plaintiff.

26. On 11.21.2022 at or around 0926, Plaintiff asked to briefly meet with HK to collaborate regarding needed projects.

27. On 11.21.2022 at or around 1500, AK and Johnny Ketty, said brother of AK and co-owner of GP, hereinafter, ("JK"), arrived at GP. As AK was in the front of the building, JK sat and talked with Plaintiff stating that JK haven't had an opportunity to meet Plaintiff and asked why Plaintiff felt Plaintiff was fit for the job, etc., as a third interview after being hired. JK also informed Plaintiff that NV did not like Plaintiff, "specifically" and did not want Plaintiff in the Office Manager position and that NV wanted the position. Jk warned Plaintiff to be careful of NV.

28. On 11.22.2022 at or around 1200, Plaintiff asked to have a 30-minute meeting with HK to discuss and share progress on Plaintiff's drafting of pertinent staff documents.

29. On 11.22.2022 at or around 1235, JG stood in the doorway of Plaintiff's office and in an aggressive and confrontational manner asked Plaintiff if Plaintiff turned the heat up that day. After Plaintiff stated, "no", JG said that no one else did it and that Plaintiff did do it and JG claimed to have "verified" that Plaintiff did turn up the heat that day. JG continued to scold Plaintiff saying how GP could not afford high heating bills and that the thermostat was to stay at 72. JG angrily stated that she turned the heat off, seemingly as some form of punishment. Plaintiff informed JG that Plaintiff did not appreciate JG's tone or approach and that there was a more professional way of speaking. Plaintiff asked JG to excuse Plaintiff because Affiant had a call to return.

30. AK suggested Plaintiff be included in meetings, etc with the Company that was implementing the CRM system for GP because Plaintiff would be solely responsible for implementing it throughout the company.

31. Plaintiff shared this information with HK. Plaintiff attended a meeting scheduled on 11.22.2022 at 1300 regarding the CRM system.

**E. The Facts of my case are as follows**

32. On 11.22.2022, Plaintiff spoke with HK and asked what experience did HK have as a Human Resources Manager, was HK familiar with any of the employment laws, did HK have access to employee files. HK said "no" to all questions. Plaintiff informed HK that there were a confidentiality breach with employee files, etc., and Plaintiff would inform AK. Plaintiff requested a list of all employees from HK by the end of business day on 11.23.2022. Additionally, Plaintiff asked HK what hiring ads were currently ongoing and Plaintiff should be kept in the loop of new hires and onboarding. Plaintiff brought up the need for job descriptions for all positions and other pertinent documents that should be placed in all employee files and a needed filing system to be put in place.

33. At or around 1435 on 11.22.2022, NV gave Plaintiff one (1) key to the employee files and one (1) key to the front building entrance. NV stated that Plaintiff would not oversee NV or JG because of their "special relationship" with AK. KW gave Plaintiff a GP shirt as part of company uniform and stated that all staff get three (3) shirts and would bring two from home after KW washed them. Plaintiff declined and informed KW that staff should receive new and unused shirts. Plaintiff accepted the one, supposedly, new and unused shirt.

34. On 11.23.2022 at or around 0915, Plaintiff spoke with AK to share the concerns of employee files and ensuring correct classification of staff and other topics such as the concerns with JG and NV. AK stated that he would speak with AK's "accountant" to get advice from them regarding employment laws. Plaintiff asked did AK mean attorney and AK stated that he meant accountant.

35. On 11.23.2022 at or around 1630, AK called Plaintiff to share that AK spoke with accountant and was told that because GP was a small company those concerns and certain employment laws did not apply and AK stated that AK would pay the accountant to sit with Plaintiff to discuss further. Plaintiff didn't feel a need to do that when Plaintiff was only reporting found information to Plaintiff's supervisor only to work in the best interest of GP.

36. AK also stated that Plaintiff needed to communicate with Plaintiff'ss staff more and have meetings but wanted Plaintiff to focus more on creating the product and inventory lists.

37. Plaintiff reminded AK that Plaintiff had asked on several occasions for a list of staff Plaintiff were to oversee and it had not been provided. Plaintiff also informed AK that Plaintiff drafted a suggested meeting schedule on 11.17.2022 for regular management, all company staff, one-on-one meetings and a regular schedule for staff performance evaluations and self-assessments that Plaintiff was working towards starting the week of 12.05.2022 before the Christmas holiday break. And that Plaintiff took a period of time each day to focus on the product list spreadsheet which was started on 11.15.2022 and about 85% finished by 11.23.2022.

**E. The Facts of my case are as follows**

38. On 11.25.2022 at or around 1530, in an abrupt fashion AK gave Plaintiff first names and nicknames of ten (10) staff that Plaintiff were to oversee as AK was up and headed out of the office to leave for the day. JG and HK were in that list of names given. Plaintiff stated that full names and titles were needed and AK and JK stated that they would provide Plaintiff with that information on "Monday." On Monday, 11.28.2022, AK nor JK provided Plaintiff with the needed information.

39. On 11.25.2022, Plaintiff provided JG with a Staples shopping cart printout of needed office supplies after Plaintiff briefly spoke with AK about the items.

40. On 11.25.2022, AK and JK came into the office to speak with Plaintiff. AK spoke about JG's behavior towards Plaintiff. AK defended JG and made a comment that KW and JG were not "racist" and to defend what JK shared with Plaintiff about NV, how NV spoke so highly of Plaintiff and that AK had texts from NV to prove it. JK mentioned that JG should be sharing all access, data and the process of the IPad tablet with Plaintiff and JK was going to have JG turn over all access. AK told JK not to do that just yet.

41. On 11.28.2022 at or around 1028, Plaintiff received a company email from JG asking Plaintiff to complete a 'Purchase Order Form' JG drafted "to facilitate the process for ordering supplies" and to include the reason for the purchase. Plaintiff called AK to ask if this request was a past practice and AK stated, , falsely said "yes." AK said that he would be in the office later and would review the order. Plaintiff then asked JG for past purchase order forms when JG was able. JG, immediately, became argumentative and defensive with Plaintiff accusing Plaintiff of implying Plaintiff was being "targeted", and that Plaintiff was being "difficult", while accusing Plaintiff of recording the conversation. JG continued to say that the office had an audio above where Plaintiff was standing. JG stated that there was no need for the form prior until Plaintiff came.

42. AK arrived and Plaintiff showed AK the list of items that AK approved. AK explained that the reason AK wanted Plaintiff to complete the form was because AK had a past employee that was given a company credit card and used it excessively. Plaintiff did not have a company credit card and Plaintiff spoke with AK prior to giving the printed cart to JG for transparency.

43. Plaintiff revised the form JG provided and Plaintiff distributed to the office staff making them aware that the form was to be completed when office supplies were ordered online or in-store, given to JG and with JG giving Plaintiff a copy once supplies were ordered.

44. Plaintiff completed the 'Office Supply Request Form' and attached a printout of the Staples cart and handed it to JG. JG did not return a copy of the form to Plaintiff once order was placed as instructed.

45. On 11.28.2022, AK and JK rushed in to have Plaintiff draft a contract for their construction company, 'Creative Brick Paving.'

46. On 11.28.2022 at or around 1512, JG referred to Plaintiff as "her" when speaking to HK about a Lowes contract that AK wanted HK to review. JG stated to HK, in a sarcastic

tone, you may "want to show it to her." Plaintiff was sitting in her office at the time.

47. On 11.28.2022 at or around 1615, JG pushed Plaintiff's office door completely shut as JG walked by while Plaintiff sat at her desk.

48. On 11.29.2022, upon Plaintiff's final request, NV emailed Plaintiff a list of employees and HK gave Plaintiff a printed employee list. Both lists had names that the other did not have.

49. On 11.29.2022, Plaintiff found and printed an online injury incident form to have KW complete for the injury KW endured on 11.15.2022 due to a hand cut with KWs home pocket knife that caused KW to seek needed medical care where stitches were applied. Plaintiff drafted a Safety Policy and Procedures for HK's review and approval.

50. On 12.01.2022, Plaintiff gave HK a handful of job descriptions to review and notate on for any needed additions and corrections. HK changed the "report to" for the administrative Assistant position from Office Manager to CEO. Plaintiff requested a meeting to include AK, JK, HK, and Plaintiff so that all could get clarity in regards to "report to's". This would also assist Plaintiff to complete staff documentation and job descriptions accurately to have ready for distribution and signing at the first staff meeting. The requested meeting did not take place.

51. 12.02.2022, Plaintiff created a yearly safety training which involved all staff viewing three videos dealing with civility, safety awareness and harassment and discrimination.

52. On 12.02.2022, Plaintiff overheard JG ask HK did HK get the meeting invite with the Representatives to further discuss the CRM system. Plaintiff was never informed.

53. On 12.05.2022, upon Plaintiff arrival at 0845, JG and KW were in the back of the building with the back door propped wide open smoking cigarettes. KW was standing in the opened doorway and JG was standing outside next to the open door. Plaintiff asked the ladies to smoke outside with the doors closed and that the smoke fumes were very strong and able to be smelled in the front. Plaintiff asked both ladies if they needed Plaintiff's assistance with the large boxes and trash piled up at the door. JG stated that the outside dumpster was full. Plaintiff stated that she would assist when ready.

54. On 12.05.2022, Plaintiff emailed AK, JK, and HK an organizational chart that Plaintiff drafted on 11.17.2022 for review before finalizing it.

55. The first Management Meeting was scheduled for 12.07.2022 from 1300-1400. This was decided after discussing with AK. Plaintiff sent an email invite that only HK accepted.

56. On 12.05.2022 at or around 1600, Plaintiff asked JG to see one of the IPad tablets that were being organized for sales staff. JG had been working on these tablets, adding product data and measurements and other forms that JG only worked with HK, excluding Plaintiff. JG asked Plaintiff why Plaintiff wanted to see an IPad tablet. Plaintiff explained why and JG decided to give Plaintiff an IPad to view. All the product data that Plaintiff was made to contact manufacturers for were in the tablets.

**E. The Facts of my case are as follows**

**8 of 10**

57. Shortly after, as JG walked pass Plaintiff's office door, JG says JG does not know why Plaintiff have to always mention that Plaintiff is the "Office Manager" every time JG speaks to Plaintiff. HK and JG started whispering amongst one another about Plaintiff. Plaintiff walked to the front between HK and JG desks and asked was there a problem with something. JG started off on a tangent again as usual attempting to incite Plaintiff into an argument. Plaintiff asked to speak with HK in Plaintiff's office. Plaintiff asked if HK could call AK and JK. JK was available. Plaintiff attempted to explain what happened and also reminded JK that JGs behavior was excessive at that point. JK mentioned something about "he say and she say" and that JK had enough. JK said to schedule a meeting with everyone for 12.06.2022 at 1130 to discuss further. Plaintiff sent out an email invite to HK, AK, JK, JG, and KW. Only KW and HK accepted. JG declined due to an appointment JG stated she had scheduled during that time on 12.06.2022.

58. On 12.06.2022 at 0819, Plaintiff emailed HK, AK and JK the five (5) complaint forms that Plaintiff completed.

59. Plaintiff, verbally, made HK aware of the concerns with JG on 11.28.2022 and 12.05.2022; AK on 11.23.2022; AK and JK on 11.25.2022; and JK on 12.05.2022 and then finally, HK, AK, and JK by email by emailing the complaint forms.

60. On 12.06.2022 at or around 0853 to 0957, KW and JG left. Neither punched out. JG left again for her appointment around 1025 returning at around 1300.

61. On 12.06.2022, AK and JK arrived at or around 1200, walked into Plaintiff's office. JK was in and out of Plaintiff's office while AK sat to inform Plaintiff that Plaintiff had to be let go because AK could not afford to pay Plaintiff as much as AK needed Plaintiff and when finances were in the positive, he would bring Plaintiff back. This conversation took place for about 30 to 45 minutes or so. Thereafter, AK and JK went to the front to have a meeting with the rest of the staff asking Plaintiff if she was coming. During the meeting AK and JK explained the financial hardship GP was having and stated that the current week would be the last working week for everyone until further notice. 12.09.2022 was to be the last day for everyone per AK and JK. JG returned and sat in on the remainder of the meeting at or around 1300.

62. On 12.07.2022, Plaintiff drafted a meeting overview and distributed by email to HK, AK, JK, KW, and JG.

63. On 12.07.2022 at or around 1430, during a lunch break, Plaintiff patronized a business next door, hereinafter, ("the company") to GP only to learn that JG continuously harassed the owner and her staff which included, JG repeatedly calling the police on them and parking in front of their business door and having other staff participate in the harassment. After Plaintiff shared that Plaintiff worked next door, the owner stepped away and disposition changed with Plaintiff. Owner asked Plaintiff if Plaintiff meant "right next door" and went on to share the problems JG caused. Plaintiff was appalled. The

company is owned by people that would appear to be of the same national origin and color as Plaintiff.

64. Plaintiff's last day was 12.08.2022 at 1620. Plaintiff returned the file key, building key, a GP shirt and punch card to HK and both HK and Plaintiff signed to acknowledge the returns.

65. Per Agreement signed by Plaintiff and AK on Monday, November 21, 2022, "final payment will be paid on day of separation if separation is initiated by GP.

66. On 12.08.2022 at or around 1635, Plaintiff emailed AK, JK and cc'd NV, informing them that Plaintiff gave all items to HK, a list of work tasks Plaintiff had done, a request for a letter that included the termination and dates worked, and requesting owed wages to be direct deposited using the bank information already on file.

67. On 12.08.2022 at or around 1819, NV sent an email to Plaintiff, ccing AK and JK threatening to withhold Plaintiff's final wages until it was "verified for accuracy" that one of the keys given to HK was to the file cabinet and the passwords requested to be given to Plaintiff's work computer and email.

68. Plaintiff finally received final wages on 12.16.2022 at or around 0645 via direct deposit, after AK decided to attempt other avenues that failed which included the attempt to coerce Plaintiff into personally delivering a cashier's check to Plaintiff's location. Plaintiff was not comfortable with that so Plaintiff requested it to be sent direct deposit as initially requested. It was finally sent direct deposit on 12.15.2022 which was scheduled to be deposited on 12.19.2022 but received by Plaintiff, the next day on 12.16.2022.

68. On 04.09.2023, Plaintiff contacted GP after never receiving the end of the year tax form and to request GP's EIN. AK claimed that tax forms had not been sent out as of yet because they asked for an extension. NV claimed that the tax form was mailed but returned and she would not mail it until 04.19.2023. Plaintiff asked for the tax form to be emailed as well and for the returned mail envelope be emailed. NV told Plaintiff to "cease and desist" contacting her. Plaintiff never received the tax form in the mail or email.

69. On 12.02.2023, Plaintiff's employee file request was partially satisfied. Payroll records were not given. As an attempt to address this matter honorably and administratively, Plaintiff offered to settle this matter outside of court and to also get a mutual consensus to rescind the non-disclosure agreement in a written notice dated for 01 November 2023 and the opposing party/defendant refused.

**E. The Facts of my case are as follows**

**10 of 10**

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

**IV.    Exhaustion of Federal Administrative Remedies**

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

19 October 2023.

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☑    issued a Notice of Right to Sue letter, which I received on *(date)*

30 October 2023.
*(Note:  Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐    60 days or more have elapsed.

☐    less than 60 days have elapsed.

**V.    Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order.  Do not make legal arguments.  Include any basis for claiming that the wrongs alleged are continuing at the present time.  Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts.  Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.  Attach additional pages if needed.

The plaintiff asks the court to order damages totaling $570,000.00, jointly and severally, in the defendants public/corporate and private/individual capacity to make the Plaintiff whole due to the injury caused by the defendants that caused economic injury - lost earnings and future lost earnings, pain and suffering, and mental distress. 1. Lost earnings - for 46 weeks of back pay from the week of 09 December 2022 to 02 November 2023. 2. Future earnings - 36 months of future pay from 03 November 2023. 3. Plus triple damages. 4. Court order of revocation of non-disclosure agreement: As a matter of lawful right, Plaintiff has already rescinded her signature in writing for the Non-Disclosure and Confidentiality Agreement dated for 21 November 2022 but further asks the court to issue a court order rescission because it is against the Plaintiffs religion, culture and customs to be associated with and/or bound to fraudulent and unfair practices that are unjust in any way and bring harm to any living existence and/or humanity because of those fraudulent actions and/or practices and to return the parties to the position they occupied before the contract was formed.

7

MIED ProSe 7 (Rev 5/16) Complaint for Employment Discrimination

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 05 December , 2023 .

Signature of Plaintiff    by'. ALL RIGHTS RESERVED .

Printed Name of Plaintiff    NINTU XI GILMORE-BEY

8

MIED ProSe 7 (Rev 5/16)  Complaint for Employment Discrimination

**Additional Information:**

Enclosures: Exhibit A - EEOC Determination and Notice of Rights (01 page); Exhibit B - Notice To Sue/File Claim, Settlement Demand, Employee Personnel File Request, Notice of Rescission, and Cease And Desist (02 pages); Exhibit C - Indeed Office Manager job posting (02 pages); Exhibit D - Non-Disclosure and Confidentiality Agreement (02 pages); Exhibit E - Independent Contract Employment Offer (02 pages).

Exhibit A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Detroit Field Office**
477 Michigan Avenue, Room 865
Detroit, MI 48226
(313) 774-0020
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 10/30/2023

**To:** NINTU XI GILMORE-BEY
c/o 60 East Milwaukee Street 6633
DETROIT, MI 48202
Charge No: 471-2023-01901

EEOC Representative and email:   ADAM PATON
Investigator
adam.paton@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 471-2023-01901.

On behalf of the Commission,

Digitally Signed By:Michelle Eisele
10/30/2023

Michelle Eisele
District Director

Exhibit B

## NOTICE TO SUE/FILE CLAIM, SETTLEMENT DEMAND, EMPLOYEE PERSONNEL FILE REQUEST, NOTICE OF RESCISSION, AND CEASE AND DESIST

Effective Date: 01 November 2023

From: Nintu Xi Gilmore-Bey
℅ 60 East Milwaukee Street, Unit 6633
Detroit, Michigan [48202-9998]

To: GLOW PATH PAVERS, LLC., all derivatives thereof.
Attn: Alex Ketty - Resident Agent/Owner, heirs, successors, agents, assigns.
1627 Gerundecut
West Bloomfield, Michigan 48324
U.S.P.S. Priority Mail No. 9505 5119 2351 3306 3841 19 .

**RE: Nintu Xi Gilmore-Bey, Former Office Manager**

Dear Alex Ketty, et al., heirs, successors, agents, assigns,

### NOTICE OF INTENT TO SUE/FILE CLAIM AND SETTLEMENT DEMAND

This notice of intent to sue/file claim shall serve as a formal notice that I, Nintu Xi Gilmore-Bey intends to commence a lawsuit against you, the listed Defendant(s)/Respondent(s), due to the employment discrimination of national origin and retaliation which resulted in you terminating me on 08 December 2022 for false pretenses. Your actions caused injury to me financially, mentally, spiritually, and emotionally which had a great effect on my livelihood and the ability to provide for my family. I am a protected class by federal and international law. This is an administrative process done in good faith to give you an opportunity to cure with honor. I reserve the right to seek full recourse through any remedy deemed necessary.

I. **THE PLAINTIFF(S)/CLAIMANT(S).** NINTU XI GILMORE-BEY (the "Plaintiff").

II. **THE DEFENDANT(S)/RESPONDENT(S).** ALEX KETTY, JOHN KETTY, NONI VALICENTI, JULIE GRAVES, HARRY KIRSBAUM, GLOW PATH PAVERS, LLC., AMBIENT GLOW PRODUCTS, LLC., GLOW PATH TECHNOLOGY, LLC., heirs, successors, agents, assigns, in their public/corporate and private/individual capacities, severally and jointly.

III. **SETTLEMENT DEMAND.** As a result of the actions of the Defendant(s)/Respondent(s), the Plaintiff(s)/Claimant(s) are willing to resolve the matter for just compensation in the amount of $570,000.00 severally and/or jointly (back pay for 46 weeks from the week of 09 December 2022 to 02 November 2023; future pay 36 months from 03 November 2023 plus triple damages) **and** rescission of the Non-Disclosure and Confidentiality Agreement dated for 21 November 2022. This offer to cure and settle this matter outside of court and avoid a lawsuit, attorney and other fees is valid for thirty (30) calendar days from the effective date above.

IV. **GOVERNING LAW.** This notice shall be governed under state law, federal law, common law, International law and The Uniform Commercial Codes (UCC), but not limited to.

Exhibit B

## EMPLOYEE PERSONNEL FILE REQUEST

This is a request pursuant MCL 423.501 to 423.505, Bullard-Plawecki Employee Right to Know Act and the Privacy Act of 1974 (5 U.S.C. 552a) for the following records pertaining to former staff personnel: NINTU XI GILMORE-BEY:

1. Copy of **Complete** personnel records/files.
2. **All** documentation/records regarding NINTU XI GILMORE-BEY.

Please satisfy this request within thirty (30) calendar days from the effective date above.

## NOTICE OF RESCISSION

This is actual and constructive notice to Glow Path Pavers, LLC., any and all derivatives thereof, and its officials, staff, clients, agents, successors, assigns and any of its affiliated agents, parent companies, proxies, third parties etc., exercising my right to rescind/revoke, *nunc pro tunc,* my consent and signature on the 'NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT' signed by Nintu Xi Gilmore-Bey - Employee, Agent, or Independent Contractor **and** Alex Ketty/Alaa Toma - Authorized Representative of GLOW PATH PAVER, LLC. on 21 November 2022.

## CEASE AND DESIST

You, named Defendant(s)/Respondent(s) are noticed to cease and desist any and all malice intentions, mischief, retaliatory attacks, targeting and/or harassment in any form and conspiring with any third-parties to do the same against me, Nintu Xi Gilmore-Bey or any person, place, group or thing I am connected to. You and your staff caused injury to me due to your discriminatory and fraudulent actions and deeds and I lawfully have 'right to remedy'. I intend to fully exercise those rights to bring justice and restore wholeness from those injuries caused by you and your staff. You are asked to be honorable in your actions going forward. You, named Defendant(s)/Respondent(s) have been duly noticed.

Without malice or mischief, in sincerity and honor,

As my word is my bond,
Duly tendered in honor

By: _____
Nintu Xi Gilmore-Bey.
All Rights and Remedies Reserved-
Uniform Commercial Code 1-103,
1-207 (1-308), 7-103, 9-311, et al.

   

Exhibit C.

**This job has expired on Indeed**
Reasons could include: the employer is not accepting applications, is not actively hiring, or is reviewing applications

# Office Manager

Glow Path Pavers LLC
Waterford, MI 48328
Full-time

 **Application submitted**

You updated the status of this job on November 2, 2022
View All Applied Jobs

## Job details

No matching job preferences ☑

### Job Type

**Full-time**

### Shift & Schedule

**8 hour shift**    **Monday to Friday**

## Qualifications

- Management: 3 years (Preferred)

## Full Job Description

Glow Path Pavers, LLC is an innovative manufacturer and distributor of illuminating materials such as Glow Chip, Illuminating Sand, Illuminating Polymeric Sand, and Illuminating Brick pavers. Our firm is in need of an office manager to oversee the in-house staff of 5 and our outside sales representatives in Texas, Florida and California. Please visit our webiste to learn more about our exciting company:
https://glowpathpavers.com/

Exhibit C

Interested candidates must have managerial expereince and some knowledge of the construction industry and sales. For immediate consideration contact Alex Ketty at 248-229-2788.

Job Type: Full-time

Pay: $22.00 - $24.00 per hour

Schedule:

- 8 hour shift
- Monday to Friday

Ability to commute/relocate:

- Waterford, MI 48328: Reliably commute or planning to relocate before starting work (Required)

Experience:

- Management: 3 years (Preferred)

Work Location: One location

## Hiring Insights

Hiring **1** candidate for this role

Urgently hiring

**Job activity**

Employer reviewed job **2** days ago

Posted 24 days ago

**Report job**

Office Manager jobs in Waterford, MI

Jobs at Glow Path Pavers in Waterford, MI

Office Manager salaries in Waterford, MI

Hiring Lab     Career Advice     Browse Jobs     Browse Companies     Salaries     Find Certifications

Browse Schools     Indeed Events     Work at Indeed     Countries     About     Help Center

**GLOW PATH**        Innovation in Illumination        **Headquarters:**
1060 W Huron Street
Waterford Township, Michigan 48328

# <u>NON-DISCLOSURE AND CONFIDENTIALITY AGREEMENT</u>

This agreement is made between GLOW PATH PAVERS, LLC., agents, successors, and assigns, (the "Company") and NINTU XI GILMORE-BEY (the "Employee, Agent, or Independent Contractor") this 21st day of November 2022.

Whereas the Company has developed certain products, technology, processes, and intellectual property, which is confidential and proprietary in nature, and

Whereas the undersigned, as an Employee, Agent, or Independent Contractor of the Company has or will in the future come into contact with or be privy to this confidential and proprietary information, and

Whereas the Company seeks to protect this information in order to keep it confidential and proprietary.

NOW THEREFORE, the parties agree as follows:

1. The undersigned as an Employee, Agent, or Independent Contractor of the Company shall refrain from disclosing any and all customer lists, customer contacts, customer information, trade secrets, proprietary information, work product, financial information, or any other confidential information to any outside party (third party) without the specific written consent of the Company. Further, NINTU XI GILMORE-BEY, as an Employee, Agent, or Independent Contractor of the Company, you shall refrain from using any of the Company's customer lists, customer contacts, customer information, trade secrets, proprietary information, work product, financial information, or any other confidential information in dealings on its behalf with any outside party (third party) without the specific written consent of the Company. Further, at no time shall NINTU XI GILMORE-BEY as an Employee, Agent, or Independent Contractor of the Company ever publish this information in any format, including but not limited to social media without written consent from the Company.

2. This agreement shall remain in effect during the entire Company and Employee, Agent, or Independent Contractor work relationship, expiring upon resignation or termination of Employee, Agent, or Independent Contractor employment, with the duration of confidentiality lasting indefinitely. Employee, Agent, or Independent Contractor shall use their best efforts to abide by the nondisclosure and confidentiality provisions of this agreement.

3. In the event the undersigned Employee, Agent, or Independent Contractor violates this agreement, the employee, agent, or independent contractor agrees to pay the Company the sum of liquidated damages in the amount of Fifty Thousand Dollars ($50,000.00) should the Company wish to enforce this agreement. In the event of a breach, the Company shall also be entitled to receive its costs and actual attorney fees incurred in enforcing this agreement.

Revised 11.21.2022

1 of 2

**GLOW PATH**   Innovation in Illumination

**Headquarters:**
1060 W Huron Street
Waterford Township, Michigan 48328

4. The undersigned agrees that any confidential or proprietary information shall not be shown, copied, disseminated, or communicated to any outside party (third party) for any purpose, whatsoever, except those that are compelled by Court order.

5. This Agreement shall be governed by the laws of the State of Michigan, and the parties agree that any action to enforce same shall take place in Oakland County, Michigan.

6. This agreement is contractual in nature and shall be binding on the parties, their respective predecessors, successors, and assigns.

7. This agreement shall also cover Ambient Glow Products and Glow Path Technology, LLC.

8. This agreement may be executed in Counterparts, and the counterpart shall be construed to be an original for all purposes.

9. The parties affirm that each has reviewed the provisions set forth above and agree to be bound by these terms and conditions.

Dated this __21ˢᵗ__ day of __NovembeR__ , 2022.

_____
Printed name – Authorized Representative of
GLOW PATH PAVERS, LLC.

_____
Signature – Authorized Representative of
GLOW PATH PAVERS, LLC.

__NINTU XI GILMORE-BEY__
Printed Name – Employee, Agent, or
Independent Contractor.

by. _____ By auth. rep.
Signature – Employee, Agent, or
Independent Contractor.

Revised 11.21.2022

1 of 2

Glow Path Pavers LLC
1060 W Huron Street
Waterford Township, MI 48328

Innovation in Illumination



**GLOW PATH**

## Independent Contract Employment Offer

November 17 , 2022

Nintu Xi Gilmore·Bey
c/o 60 East Milwaukee Street, Unit 6633
Detroit, Michigan [48202·9998]

Position Title: Office Manager for Glow Path Pavers, LLC and Glow Path Technology, LLC

Proposed Start Date: Tuesday, November 15, 2022

Employment Status: 1099 Independent Contractor

**Primary Work Location**
1060 W. Huron Street, Waterford, Michigan 48238

Compensation: $25 per hour. Any overtime (over 40 hours a week) will be paid time and a half ($37.50) of hourly rate ($25.00 per hour). No paid holidays, vacation or sick time. No health insurance. Paid weekly on Fridays. Work week is Friday to Thursday. First Pay Day Friday, November 18, 2022.

Schedule: Monday through Friday any time between 8:00 AM and 5:30 PM. Working eight (8) hours a day with a 30·minute meal period and two (2) 15·minute daily breaks.
A punch card will be assigned to contractor for time tracking purposes.

Reporting: Direct reporting to Alex Ketty and John Ketty.

Support: Noni Valicenti – Payroll Manager and Harry Kirsbaum – HR Director. In the event you require support reach out to the parties listed. They will direct you to any resources you may require.

Review : No later than 90 days after start date an employment review will be conducted by both parties. Any modifications to terms of employment will be discussed at this time.

Responsibilities:
Oversee all office operations at the direction of Alex Ketty. : Responsible for overseeing and maintaining the daily operations of the office. Oversee the in·house staff of 5 and our outside sales representatives in Texas, Florida and California. A list of contacts employees and sales staff will be provided to you.

Page 1 of 2

Glow Path Pavers LLC
1060 W Huron Street
Waterford Township, MI 48328

Innovation in Illumination



**GLOW PATH**

Support company operations by maintaining office systems and supervising staff.

Maintain office services by organizing office operations and procedures, controlling correspondence, and designing filing systems.

Provide historical reference by defining procedures for retention, protection, retrieval, transfer, and disposal of records.

Maintain office efficiency by planning and implementing office systems.

Design and implement office policies by establishing standards and procedures. Integrate office procedures into a cohesive plan.

Complete operational requirements by scheduling and assigning employees and follow up on work results.

Keep management informed by reviewing and analyzing special reports, summarize information and identify trends.

Maintain office staff job results by coaching, counseling, and discipling employees. Perform job reviews with staff.

Work with all departments to insure cohesive operations.

Contribute to team effort by accomplishing related results as needed.

**Separation from Company:** Upon separation of company by either party final payment will be paid on day of separation if separation is initiated by Glow Path Pavers, LLC. Final payment will be mailed on regular payment date if separation is initiated by contractor.

**Non-Disclosure Agreement:** NDA document must be fully executed prior to commencement of employment.no later than Monday, November 21, 2022.

Signature: _by. A.P.S. LLC 1-30/5 by/auth. rep._
Nintu Xi Gilmore-Bey/ Independent Contractor

Date: _21 November 2022_

Signature: _____
Alex Ketty/ Glow Path Representative

Date: _11/21/2022_

Page 2 of 2

JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

County in which action arose: Oakland

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
NINTU XI GILMORE-BEY.

**DEFENDANTS**
ALEX KETTY a.k.a. ALAA TOMA;JOHNNY KETTY;NONI L. VALICENTI; HARRY KIRSBAUM;JULIE ANN GRAVES;GLOW PATH PAVERS,LLC; GLOW PATH TECHNOLOGY,LLC;AMBIENT GLOW PRODUCTS,LLC, heirs, successors,agents,assigns ,severally, jointly, public/corporate, private/individual.

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Case: 2:23-cv-13083
Assigned To : Parker, Linda V.
Referral Judge: Altman, Kimberly G.
Assign. Date : 12/5/2023
Description: CMP GILMORE-BEY V. KETTY ET AL

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☑ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES

*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☑ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☑ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Elliott-Larsen Civil Rights Act No 453, Public Act of 1976;Title VII, US Civil Rights Act of 1964; 18 U.S.C. § 1001.

Brief description of cause:
Employment discrimination; Fraud.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $** 570,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☑ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
05 December 2023.

SIGNATURE OF ATTORNEY OF RECORD
by: All Rights Reserved

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.        Is this a case that has been previously dismissed?        ☐ Yes
                                                                     ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.        Other than stated above, are there any pending or previously
          discontinued or dismissed companion cases in this or any other      ☐ Yes
          court, including state court? (Companion cases are matters in which  ☒ No
          it appears substantially similar evidence will be offered or the same
          or related parties are present and the cases arise out of the same
          transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :